UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARWIN NATIONAL ASSURANCE
COMPANY,

　　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No:  6:11-cv-1388-Orl-36DAB

BRINSON & BRINSON, ATTORNEYS
AT LAW, P.A., HAYNES E. BRINSON,
PHYLLIS A. HUNT, THE HAY CAFE
RANCH, LLC and MASRELD
INVESTOR GROUP, LLC,

　　　　　　　　Defendants.
_____

## ORDER

This cause comes before the Court on Plaintiff Darwin National Assurance Company's

("Plaintiff" or "Darwin") Motion for Summary Judgment ("Motion for Summary Judgment")

(Doc. 27).  Defendants Brinson and Brinson, Attorneys at Law, P.A. (the "Brinson Law Firm")

and Haynes E. Brinson ("Haynes Brinson") filed a Response in opposition ("Response") (Doc.

29), to which Darwin replied ("Reply") (Doc. 33).  For the reasons that follow, Darwin's Motion

for Summary Judgment will be granted.

I.　　　BACKGROUND AND FINDINGS OF FACT

　　　A.　　　The Foshee Lawsuit, the Foshee Appeal, and the DCA Bar Complaint

On March 11, 2009, Defendant Phyllis A. Hunt ("Phyllis Hunt") and Defendant The Hay

Cafe Ranch LLC ("The Hay Cafe") were named as defendants in a separate action for mortgage

foreclosure filed in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County,

Florida, styled *Foshee v. The Hay Cafe, LLC*, No. 2009-CA-2808-MF (the "Foshee Lawsuit").

Doc. 34 at ¶ 9(a).[1]  On April 21, 2009, a clerk's default was entered against The Hay Cafe in the Foshee Lawsuit.  *Id.* at ¶ 9(b).  On June 30, 2009, attorney Haynes Brinson and his law firm, the Brinson Law Firm (collectively, "Brinson"), began representing Phyllis Hunt and The Hay Cafe (collectively, "Hunt") in the Foshee Lawsuit.  *Id.* at ¶ 9(c).  On November 13, 2009, five days before trial in the Foshee Lawsuit, Brinson filed a motion to set aside the clerk's default entered against The Hay Cafe.  *Id.* at ¶ 9(d).  On November 18, 2009, the trial court refused to set aside the clerk's default against The Hay Cafe, and the Foshee Lawsuit proceeded to trial.  *Id.* at ¶ 9(e).  The Foshee Lawsuit resulted in a final judgment of foreclosure against The Hay Cafe in the amount of $2,859,416.08, plus interest, and a dismissal of Phyllis Hunt, without prejudice.  Doc. 28-2, pp. 49–54; Doc. 34, ¶ 9(f).

On December 29, 2009, Brinson filed, on behalf of Hunt, a notice of appeal from the final judgment of foreclosure (the "Foshee Appeal") in the Florida Fifth District Court of Appeal (the "DCA").  Doc. 28-2, p. 48; Doc. 34, ¶ 9(g).  On January 27, 2010, the DCA issued Brinson an order to show cause why the Foshee Appeal should not be dismissed as premature.  Doc. 34, ¶ 9(h).  After it did not receive a response to the order to show cause, on February 25, 2010, the DCA issued Brinson an order to show cause why Haynes Brinson should not be personally sanctioned for failure to comply with the previous order.  Doc. 28-2, p. 55; Doc. 34, ¶ 9(i).  On March 25, 2010, Haynes Brinson was personally sanctioned with a $250 fine by the DCA for

---

[1] The Hay Cafe was wholly-owned by Phyllis Hunt, who served as its managing member.  *See* Doc. 1-1, p. 43; Records of Fla. Dep't of State, Div. of Corps., http://sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=L05000035339&inq_came_from=NAMBWD&cor_web_names_seq_number=0000&names_name_ind=N&names_cor_number=P15492&names_name_seq=0000&names_name_ind=N&names_comp_name=HAYCONSULTINGGROUP&names_filing_type=FORP ("Hay Cafe Division of Corporations Records").  On September 23, 2011, The Hay Cafe was administratively dissolved by the Division of Corporations of the Florida Department of State for failure to file an annual report.  *See* Doc. 28-3, ¶ 8; Hay Cafe Division of Corporations Records.

failing to respond to the February 25, 2010 order to show cause.  Doc. 28-2, p. 56; Doc. 34, ¶ 9(j).  On May 13, 2010, the DCA issued Brinson another order to show cause why Haynes Brinson should not be further sanctioned, including being reported to the Florida Bar for possible disciplinary proceedings, for failing to pay the fine and to respond to the prior orders to show cause entered in the Foshee Appeal.  Doc. 28-2, p. 57; Doc. 34, ¶ 9(k).  On June 25, 2010, the DCA issued an order referring Haynes Brinson to the Florida Bar for investigation and appropriate action in light of his failure to comply with the prior orders to show cause or to pay the sanctions imposed in the Foshee Appeal (the "DCA Bar Complaint").  Doc. 28-2, p. 58; Doc. 34, ¶ 9(l).

On July 19, 2010, the DCA issued an order to show cause by July 29, 2010, why the Foshee Appeal should not be dismissed for lack of prosecution because Brinson had not filed an initial brief on behalf of Hunt.  Doc. 28-2, p. 59; Doc. 34, ¶ 9(m).   Subsequently, the DCA dismissed the Foshee Appeal as a result of Brinson's failure to file an initial brief.  Doc. 34, ¶ 9(o).

### B.    Brinson's Application for Professional Liability Insurance

On July 29, 2010—after the DCA had issued an order referring Haynes Brinson to the Florida Bar, and also the same date as the deadline set by the DCA in its order to show cause for failure to file an initial brief—Haynes Brinson, on behalf of the Brinson Law Firm, executed and thereafter submitted to Darwin a "Lawyers Professional Liability Insurance Application" (the "Application") (Doc. 28-4).  *Id.* at ¶ 9(p).  The Application required insurance applicants to provide responses to several questions which were used by Darwin in determining the nature of the risk being assumed by Darwin and the amount of the premium that would be charged to

properly underwrite the risk inherent in the issuance of the policy.  Doc. 28-4; Doc. 28-7, ¶ 6.

The Application contained the following provision:

> THE UNDERSIGNED AUTHORIZED REPRESENTATIVE, PARTNER, DIRECTOR OR OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE THE APPLICATION IS EXECUTED AND THE TIME THE PROPOSED INSURANCE POLICY IS BOUND OR COVERAGE COMMENCES, THE APPLICANT WILL IMMEDIATELY NOTIFY THE INSURER IN WRITING OF SUCH CHANGES.  THE INSURER RESERVES ITS RIGHT TO MODIFY OR WITHDRAW ITS PROPOSAL.
>
> THE UNDERSIGNED AUTHORIZED REPRESENTATIVE, REPRESENTS AND WARRANTS ON BEHALF OF THE APPLICANT AND ALL PERSONS OR ENTITIES FOR WHOM INSURANCE IS BEING SOUGHT THAT *TO THE BEST OF HIS OR HER KNOWLEDGE AND BELIEF* AND AFTER DILIGENT INQUIRY, THE STATEMENTS SET FORTH IN THIS APPLICATION AND ANY ATTACHMENTS HERETO ARE TRUE AND ACCURATE.  IT IS UNDERSTOOD THAT THE STATEMENTS IN THIS APPLICATION, INCLUDING MATERIALS SUBMITTED TO OR OBTAINED BY THE INSURER, ARE MATERIAL TO THE ACCEPTANCE OF THE RISK, AND RELIED UPON BY THE INSURER.

Doc. 28-4, p. 3; Doc. 34, ¶ 9(t) (emphasis added).

Question 4(a) of the Application asked the following:

Has any attorney been the subject of any bar complaint, investigation or disciplinary proceeding within the past 10 years?  *If "Yes", please attach details on a separate sheet of paper, including the nature and date of the complaint, the status of the complaint, and any actions taken.*

Doc. 28-4, p. 1; Doc. 34, ¶ 9(q).

Question 4(c) of the Application asked the following:

Is any attorney aware of any claims against the law firm or its attorneys, or any incidents that could result in a claim against the law firm or its attorneys within the past 5 years? *If "Yes", how many?_____  If any, please complete Claims Supplement(s).*

Doc. 28-4, p. 1; Doc. 34, ¶ 9(q).

In response to Question 4(a) of the Application—asking whether any attorney had been

the subject of any bar complaint, investigation, or disciplinary proceeding within the past 10

years—Brinson answered "Yes" and attached to the Application documentation regarding a complaint filed against Haynes Brinson with the Florida Bar in connection with a probate matter he had handled for a client, Frank J. Lawson, prior to August 17, 2009 (the "Lawson Bar Complaint").[2]  Doc. 28-4, pp. 1, 5, 6; Doc. 34, ¶ 9(r).  However, Brinson did not provide any information relating to the DCA Bar Complaint.  Nor did Brinson provide any information regarding a complaint filed against Haynes Brinson with the Florida Bar by another client, Eric Andrew, in connection with a real estate matter Haynes Brinson handled in 2009 (the "Andrew Bar Complaint").  Brinson Depo., pp. 82–83 (Doc. 28-2, p. 24).  It is undisputed that Haynes Brinson had knowledge of the DCA Bar Complaint and the Andrew Bar Complaint prior to his execution of the Application.  Doc. 34, ¶ 9(w); Brinson Depo., pp. 82–83 (Doc. 28-2, p. 24).

In response to question 4(c) of the Application—asking whether any attorney was aware of any claims against the law firm or its attorneys, or any incidents that could result in a claim against the law firm or its attorneys within the past 5 years—Brinson answered "No".  Doc. 28-4, p. 1; Doc. 34, ¶ 9(s).

After Brinson executed the Application on July 29, 2010 and thereafter submitted the Application to Darwin, Darwin issued a "Lawyers Professional Liability Insurance Policy No. 0304-9441" (the "Policy") (Doc. 1-1, pp. 1–28) to the Brinson Law Firm, effective August 28, 2010, with a policy period of August 28, 2010 to August 28, 2011, and a retroactive date of August 28, 2008.  Doc. 1-1, pp. 1–2; Doc. 34, ¶¶ 9(u)-(v).

---

[2] The documentation submitted by Brinson included a letter from the Florida Bar indicating that it had found insufficient evidence to prove that Haynes Brinson had violated any rule governing attorney discipline in his actions related to the Lawson Bar Complaint.  The letter also stated that the file relating to the Lawson Bar Complaint had been closed and would be purged within one year of closing.  Doc. 28-4, p. 6; Doc. 34, ¶ 9(r).

###### C.     Phyllis Hunt and The Hay Cafe's Malpractice Claims Against Brinson

On December 29, 2010, counsel for Hunt sent a letter to Brinson giving notice of a malpractice claim against Brinson arising out of Brinson's representation in the Foshee Lawsuit and the resulting Foshee Appeal (the "Hunt Malpractice Claim"), and requesting disclosure of Brinson's malpractice insurance coverage pursuant to Fla. Stat. § 627.4137(1).[3]  Doc. 1-1, pp. 39-41; Doc. 34, ¶ 9(x).   On January 5, 2011, Allied World National Assurance Company ("Allied"),[4] claims manager for Darwin, sent a letter to Brinson stating that it had established a file in connection with the Hunt Malpractice Claim, that the letter was not confirmation of

---

[3] Fla. Stat. § 627.4137(1) provides:

> Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:
>
> (a) The name of the insurer.
>
> (b) The name of each insured.
>
> (c) The limits of the liability coverage.
>
> (d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.
>
> (e) A copy of the policy.
>
> In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers.  The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

[4] Because Allied was merely acting as claims agent for Darwin, all references to Allied in this Order will instead be to "Darwin."

coverage, and that Darwin reserved all rights and defenses under the Policy.  Doc. 28-5; Doc. 34, ¶ 9(y).  On January 26, 2011, Darwin sent a letter to Hunt's counsel, with a copy to Brinson, responding to their request for insurance information.  Doc. 28-6; Doc. 34, ¶ 9(z).  In the letter, Darwin advised once again that it was reserving all rights and defenses under the Policy, including any defense it might have to the extent that the events resulting in the Hunt Malpractice Claim were required to be disclosed as a claim or incident that could result in a claim in the Application.  Doc. 28-6; Doc. 34, ¶ 9(z).

In March of 2011, Darwin retained the law firm of Akerman Senterfitt ("Akerman Senterfitt") to represent Brinson in connection with the Hunt Malpractice Claim.  Doc. 29-1, p. 10.  Akerman Senterfitt worked on the Hunt Malpractice Claim throughout the month of April 2011.  Doc. 7-3, pp. 3–7.  On April 21, 2011, counsel for Hunt sent a demand letter to Akerman Senterfitt setting forth its allegations relating to the Hunt Malpractice Claim and proposing a settlement in the amount of the Policy limits.[5]  Doc. 1-1, pp. 43-49; Doc. 34, ¶ 9(aa).  On May 25, 2011, Akerman Senterfitt sent Darwin an invoice in the amount of $6,971.50 for legal services provided to Brinson through April 30, 2011 in connection with the Hunt Malpractice Claim.  Doc. 7-3.  Darwin forwarded a copy of the invoice to Brinson via email that same day.  Doc. 7-2.  In the email, Darwin instructed Brinson that, pursuant to the terms of the Policy

---

[5] The demand letter also alleged a separate malpractice claim against Brinson by Defendant Masreld Investor Group LLC (the "Masreld Group"), a limited liability company which was wholly owned by Phyllis Hunt and administratively dissolved by the Division of Corporations of the Florida Department of State on September 26, 2008.  Doc. 1-1, pp. 43–47; Doc. 34, ¶ 9(aa); Records of Fla. Dep't of State, Div. of Corps., http://www.sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=L04000046463&inq_came_from=NAMFWD&cor_web_names_seq_number=0000&names_name_ind=&names_cor_number=&names_name_seq=&names_name_ind=&names_comp_name=MASRELD&names_filing_type=.  However, the parties have stipulated that the Masreld Group is no longer pursuing a malpractice claim against Brinson.  Doc. 34, ¶ 9(dd).  Therefore, the Court will dismiss the Masreld Group from this action.

providing for a $2,500 retention amount, Brinson should pay $2,500 directly to Akerman Senterfitt and that Darwin would pay the remaining balance of $4,471.50.  *Id.*; *see* Doc. 1-1 at p. 1.  Brinson thereafter paid the $2,500 retention amount to Akerman Senterfitt.  Doc. 29-1, p. 10.

On May 31, 2011, Darwin sent a letter to counsel for Hunt, with a copy to Brinson, rejecting Hunt's demand of April 21, 2011.  Doc. 7-1; Doc. 34, ¶ 9(bb).  Darwin's letter stated that there appeared to be no coverage under the Policy for the Hunt Malpractice Claim due to "material misrepresentations" in the Application resulting from Brinson's failure to disclose:  (1) his knowledge of the trial court's refusal to set aside the clerk's default against The Hay Cafe in the Foshee Lawsuit; (2) the resulting final judgment against The Hay Cafe in the amount of $2,859,416.08 in the Foshee Lawsuit; and (3) his failure to file an initial brief by the deadline set by the DCA in the Foshee Appeal.  Doc. 7-1; Doc. 34, ¶ 9(bb).  On the same day, Darwin sent a letter to Brinson denying coverage under the Policy for the Hunt Malpractice Claim.  Doc. 34, ¶ 9(cc).

### D.    Procedural History

On August 18, 2011, Darwin filed the instant Complaint, seeking: (1) rescission of the Policy under Fla. Stat. § 627.409; and (2) a declaratory judgment finding that Darwin has no duty to provide a defense or indemnity under the Policy to Brinson in connection with the claims against Brinson asserted by Defendants Phyllis Hunt, The Hay Cafe, and the Masreld Group. Doc. 1, pp. 16–20.  In its Motion for Summary Judgment, Darwin argues that Brinson made misrepresentations in the Application which were inconsistent with Brinson's knowledge and belief, that the misrepresentations were material to the underwriting of the Policy, and that Darwin would not have issued the Policy had it known the true facts.  Doc. 27, pp. 19–25. Brinson's Response contains only the vague contention that Darwin "…should be estopped from

denying coverage…" under the Policy, without reference to specific factual circumstances which may result in estoppel, but apparently in reference to Darwin's retention of Akerman Senterfitt and its email instructing Brinson to pay the $2,500 retention amount to Akerman Senterfitt.  Doc. 29, p. 2.  Darwin's Reply contends that it should not be estopped from denying coverage under the Policy because it repeatedly asserted its rights under the Policy with regard to any misrepresentations by Brinson in the Application, and because Brinson was not prejudiced by— and in fact benefitted from—the delay before Darwin notified Brinson of the lack of coverage. Doc. 33, 3–6.

## II.   STANDARD OF REVIEW

The Court should grant summary judgment if it is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the pleadings, discovery and disclosure materials on file, and any supporting affidavits. Fed. R. Civ. P. 56(a).  Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are those that will affect the outcome of the trial under governing law.  *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record, including pleadings, depositions, answers to interrogatories, and affidavits, demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  The moving party's burden may also be discharged by showing the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp.*, 477 U.S. at 325.  When the moving party has discharged its burden, the

nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008).

## III. DISCUSSION

### A. Florida Law Applies

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[6] A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Rando v. Govt. Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009). Therefore, this Court applies Florida's choice-of-law rules.

"With regard to insurance contracts, Florida follows the *lex loci contractus* choice-of-law rule, which provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.* at 1176 (citing *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006)). No exception to the *lex loci contractus* rule applies to the Policy at issue here, s*ee Roach*, 945 So. 2d at 1164–67, nor does the Policy have a choice-of-law clause. Accordingly, the Court will apply Florida law in determining whether Darwin is entitled to rescind the Policy.

### B. Darwin Is Entitled to Rescind the Policy

"In Florida, rescission of an insurance policy on the basis of a misstatement or omission in the insurance application is governed by Fla. Stat. Ann. § 627.409." *Miguel v. Metro. Life Ins. Co.*, 200 F. App'x 961, 965 (11th Cir. 2006). That statute provides, in relevant part:

---

[6] On January 17, 2013, the Court entered an Order to Show Cause directing Darwin to show cause why its Complaint should not be dismissed for lack of diversity jurisdiction. Doc. 36. Darwin's response (Doc. 37) satisfied the Court that it has diversity jurisdiction. Doc. 41.

(1) Any statement … made by … an insured … in an application for an insurance policy … is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the … policy only if any of the following apply:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.

(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Section 627.409, Florida Statutes (2012). "[T]he statute makes plain that subsections (a) and (b) are written in the disjunctive." *Miguel*, 200 F. App'x at 967. Thus, an insurer is entitled to rescind a policy "only if it can show *either* that [the applicant] made misrepresentations in [its] application that were 'material either to the acceptance of the risk or to the hazard assumed by the insurer' *or* that it would not have issued the policy (or would have issued it under different terms) had it known the true facts" of the applicant's history. *Id.* (quoting § 627.409(1), Fla. Stat.).

However, the Eleventh Circuit "…has found that an essential prerequisite to the application of Florida Statutes section 627.409(1) is that the insured make an inaccurate statement in his application. *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1334 (11th Cir. 1995) (quoting *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359, 1362 (11th Cir. 1990))." *Miguel*, 200 F. App'x at 965–66 (internal quotation marks omitted). Therefore, this Court must first determine whether Brinson made a misrepresentation in the Application. If the Court so determines, the Court will then decide: (1) whether any such misrepresentation was material to Darwin's acceptance of the risk; or (2) whether Darwin would not have issued the

Policy or would have issued the Policy on different terms had it known the true facts.  *See id.* at 966.

> 1.    *Brinson Made Misrepresentations in the Application*

Ordinarily, "even an unintentional misstatement or omission in an insurance application can constitute grounds for rescission under [Fla. Stat. § 627.409(1)], assuming … the insurer can satisfy the other elements of either subsection (a) or (b)."  *Id.* (citing *Hauser*, 56 F.3d at 1334).  However, in *Sands*, the Eleventh Circuit "found that 'knowledge and belief' contractual language drafted by the insurer … imposed a different requirement of accuracy than that provided in § 627.409(1)."  *Hauser*, 56 F.3d at 1334 (citing *Sands*, 912 F.2d at 1364).  "[W]here the language an insurance company chooses in its insurance application shifts the focus from a determination of truth or falsity of an applicant's statements to an inquiry into whether the applicant believed the statements to be true, the applicant's answers must be assessed in light of his actual knowledge or belief.  But the presence of a 'knowledge and belief' provision in a policy will not insulate an applicant's responses from all review."  *Miguel*, 200 F. App'x at 966 (citing *Hauser*, 56 F.3d at 1334–35).  In assessing an applicant's responses to questions on an application employing "knowledge and belief" language, the Eleventh Circuit applies the following test:

> [T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief….  What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, *but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based*.  In any event, a court may properly find a statement false as a matter of law, however sincerely it may be believed.  To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception— persons who having witnessed the Apollo landing still believe the moon is made of cheese.

*Id.* at 966–67 (quoting *Hauser*, 56 F.3d at 1335).

In *Miguel*, the Eleventh Circuit had the opportunity to apply the "knowledge and belief" test to a life insurance coverage dispute.  In that case, the insured had answered "no" to a

question in her application for a life insurance policy asking whether she had ever been treated for shortness of breath or chest pain, even though four months prior to completing the application she had been treated at a hospital after complaining of chest pain and shortness of breath. *Id.* at 963–64. The application contained language stating, "I have read this application including any supplements and *to the best of my knowledge and belief,* all statements are *true* and *complete*." *Id.* at 964. After the insured died and the beneficiary of the policy filed a claim for benefits, the insurer refused to pay, asserting that the insured had made misstatements and omissions regarding her prior hospitalization. *Id.* at 962. The beneficiary filed an action for declaratory judgment, and the insurer filed a counterclaim for rescission under Fla. Stat. § 627.409(1). *Id.* The district court granted the insurer's cross-motion for summary judgment, holding that it was entitled to rescind the policy because the insured had made material misstatements and omissions in her application which were relied upon by the insurer in issuing the policy. *Id* at 962–63. On appeal, the Eleventh Circuit applied the "knowledge and belief" test, stating, "Even assuming for some reason that [the applicant] believed she had never been treated for chest pain or shortness of breath, *any such belief was clearly contradicted by facts known to her*—specifically, her own complaints regarding these symptoms and the hospitalization that followed as a direct result." *Id.* at 967 (emphasis added). Therefore, the court held that the applicant's statements on her application were "false as a matter of law" and affirmed the trial court's grant of summary judgment for the insurer. *Id.* at 967, 969.

Because the Application at issue here required the applicant to provide answers "to the best of his or her knowledge and belief," Doc. 28-4, p. 3, the Court will apply the "knowledge and belief" test in determining whether Brinson made inaccurate statements or omissions in the Application.

### a.   Question 4(a)

Question 4(a) of the Application asked the following:

Has any attorney been the subject of any bar complaint, investigation or disciplinary proceeding within the past 10 years? *If "Yes", please attach details on a separate sheet of paper, including the nature and date of the complaint, the status of the complaint, and any actions taken.*

Doc. 28-4, p. 1; Doc. 34, ¶ 9(q).  Brinson answered "Yes" to this question and attached to the Application documentation regarding the Lawson Bar Complaint.  Doc. 28-4, pp. 1, 5, 6; Doc. 34, ¶ 9(r).  However, Brinson did not provide any information relating to the DCA Bar Complaint or the Andrew Bar Complaint.  Brinson Depo., pp. 82–83 (Doc. 28-2, p. 24).  It is undisputed that Haynes Brinson had knowledge of the DCA Bar Complaint and the Andrew Bar Complaint prior to his execution of the Application.  Doc. 34, ¶ 9(w); Brinson Depo., pp. 82–83 (Doc. 28-2, p. 24).  Because Haynes Brinson knew that he had been the subject of two bar complaints within the 10 years preceding his completion of the Application and nevertheless failed to disclose them to Darwin, the Court finds that Brinson's omissions constitute misrepresentations as a matter of law.

### b.   Question 4(c)

Question 4(c) of the Application asked the following:

Is any attorney aware of any claims against the law firm or its attorneys, or any incidents that could result in a claim against the law firm or its attorneys within the past 5 years? *If "Yes", how many?_____ If any, please complete Claims Supplement(s).*

Doc. 28-4, p. 1; Doc. 34, ¶ 9(q).  Brinson answered "No" to this question.  Doc. 28-4, p. 1; Doc. 34, ¶ 9(s).  However, when Haynes Brinson completed the Application, he knew that he had not filed a motion to set aside the April 21, 2009 clerk's default against The Hay Cafe in the Foshee Lawsuit until November 13, 2009—five days before trial—even though he had been representing The Hay Cafe since June 30, 2009.  Doc. 34 at ¶ 9(a)–(d).  Second, he knew that the trial court in

the Foshee Lawsuit had refused to set aside the clerk's default and that the trial resulted in a final judgment against The Hay Cafe in the amount of $2,859,416.08.  Doc. 28-2, pp. 49–54; Doc. 34, ¶ 9(e)–(f).  Third, he knew that he had failed to respond to multiple orders to show cause issued by the DCA in the ensuing Foshee Appeal, and that he had reached the deadline for a response to the DCA's order to show cause why the appeal should not be dismissed for failure to file an initial brief.  Doc. 28-2, pp. 55–59; Doc. 34, ¶ 9(h)–(m).  Fourth, he knew that he had been referred by the DCA to the Florida Bar in connection with his actions (or lack thereof) in the Foshee Appeal.  Doc. 34, ¶ 9(w); Brinson Depo., pp. 82–83 (Doc. 28-2, p. 24).

The "knowledge and belief" test articulated by the Eleventh Circuit provides, "[T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief….  What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, *but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based.*"  *Miguel*, 200 F. App'x at 966 (quoting *Hauser*, 56 F.3d at 1335).  Here, any belief by Brinson that its response to Question 4(c) of the Application was true was clearly contradicted by its factual knowledge of the events relating to its representation of Hunt in the Foshee Lawsuit and the Foshee Appeal.  It is irrelevant that Brinson did not become aware of an actual claim against the Brinson Law Firm or its attorneys until after its completion of the Application.  Brinson clearly knew of numerous incidents relating to its representation of Hunt in the Foshee Lawsuit and the Foshee Appeal which *could result in a claim* against the law firm or its attorneys.

Therefore, the Court concludes that when Brinson denied awareness of any incidents that could result in a claim against the Brinson Law Firm or its attorneys within the 5 years preceding its completion of the Application, Brinson made statements that were false as a matter of law.

*See id.* at 967; *Simmons v. Conseco Life Ins. Co.*, 170 F. Supp. 2d 1215, 1225 (M.D. Fla. 2001) (finding that applicant's statements on insurance application were false as a matter of law and granting summary judgment to insurer on counterclaim for rescission where applicant denied having been convicted of any felonies within the previous 10 years, because the underlying facts known to applicant, such as his imprisonment on two felony convictions, "clearly contradicted his answers on the application"); *Mims v. Old Line Life Ins. Co. of America*, 46 F. Supp. 2d 1251, 1256 (M.D. Fla. 1999) (finding that applicant's statements on insurance application were false as a matter of law and granting summary judgment to insurer on counterclaim for rescission where applicant failed to report doctor's visits, because the underlying facts known to applicant "clearly contradicted her answers to the medical examiner").

> 2. *Brinson's Misrepresentations Were Material to Darwin's Acceptance of the Risk*

Having determined that Brinson's Application contained misrepresentations, omissions, and inaccurate statements with respect to Questions 4(a) and 4(c), the Court next turns to subsection (a) of Fla. Stat. § 627.409(1). The Court must determine whether Brinson's "misrepresentation[s], omission[s], concealment[s], or statement[s] [were] fraudulent or [were] material either to the acceptance of the risk or to the hazard assumed by the insurer." Fla. Stat. Ann. § 627.409(1)(a).

"A misrepresentation is material if it affects the risk undertaken by the insurer." *Mims*, 46 F. Supp. 2d at 1256 (citing Fla. Stat. § 627.409(1)). "Under subsection (1)(a) '[t]he misrepresentation need not be one that would have caused the insurer to decline to issue the policy but must only be such that a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy.' " *S.R.R.B. ex rel. Vreeland v. Life Investors Ins. Co. of America*, No. 8:08-CIV-960-T-17-MAP, 2010 WL 963789,

at *6 (M.D. Fla. Mar. 15, 2010) (quoting *Mims*, 46 F. Supp. 2d at 1256). "An insurer may establish the materiality of misrepresentations through the affidavit of an underwriter." *Mims*, 46 F. Supp. 2d at 1260–61 (citations omitted).

In *Mims*, the insured failed to disclose numerous prior hospital visits in connection with her application for life insurance. *Id.* at 1257. After the insurer denied her beneficiary's claim for benefits due to the insured's misrepresentations, the beneficiary filed suit to collect the benefits and the insurer filed a counterclaim for rescission. *Id.* at 1252–53, 1254. In support of its motion for summary judgment, the insurer offered the affidavit of one of its underwriters, who stated that the insurer would not have issued the policy had it known of the insured's hospital visits because it significantly changed the risk undertaken by the insurer. *Id.* at 1257–58. The district court acknowledged that an insurer may establish the materiality of misrepresentations through the affidavit of an underwriter, but warned, "Generally, however, such 'Monday morning quarterbacking' is disfavored and the materiality of misrepresentations will be a factual issue to be decided by the trier of fact, which naturally precludes summary judgment." *Id.* at 1260–61. However, because the beneficiary "offered no contradictory evidence to rebut the underwriter's statement" that the misrepresentations affected the risk assumed by the insurer, the court held that the misrepresentations were "material as a matter of law" and granted the insurer's motion for summary judgment on its counterclaim for rescission. *Id.* at 1261.

Here, Darwin offered the affidavit of Lawrence A. Gonzalez ("Gonzalez"), who has been employed as an insurance underwriter at Darwin since May 2008. Doc. 28-7, ¶ 2. Gonzalez attested that the  Policy was "issued based upon, and in reliance on, the representations made by Brinson in the [A]pplication" and that the "information requested in [Q]uestions 4(a) and 4(c) of

the [A]pplication was material from an underwriting perspective [and] was necessary for Darwin to accurately assess its risk in issuing the [Policy]." *Id.* at ¶ 8, 12.  Furthermore, Gonzalez stated that "Darwin would not have issued the [Policy] to Brinson" had it known about the events relating to the DCA Bar Complaint and the Andrew Bar Complaint. *Id.* at ¶ 13.  Darwin has thus offered sufficient evidence to show that Brinson's misrepresentations were material to Darwin's acceptance of the risk.  *See Mims*, 46 F. Supp. 2d at 1260–61.  Brinson has offered no contradictory evidence to rebut Gonzalez's affidavit.  Therefore, the Court finds that Brinson's misrepresentations in its answers to Questions 4(a) and 4(c) were material as a matter of law.[7]  Accordingly, Darwin is entitled to rescind the Policy under Fla. Stat. Ann. § 627.409(1)(a).

> 3.      *If Darwin Had Known the True Facts, It Would Not Have Issued the Policy*

Having already determined that Brinson's misstatements entitle Darwin to rescission under subsection (a) of Fla. Stat. § 627.409(1), the Court also concludes that Darwin is entitled to rescission under subsection (b).  "Under subsection (b), an insurer is entitled to rescind its insurance policy if it can show that the policy would not have been issued, or would have been issued under different terms, '[i]f the true facts had been known to the insurer'—that is, the facts that were omitted, concealed, or misstated in the application." *Miguel*, 200 F. App'x at 968 (quoting Fla. Stat. Ann. § 627.409(1)(b)).  In *Miguel*, the insurer submitted the uncontested affidavit of its medical director, who asserted that if the insured had answered truthfully regarding her treatment for chest pain and shortness of breath, the insurer would not have issued

---

[7]  Because the Court finds that Brinson's misrepresentations were material to Darwin's acceptance of the risk, it is not necessary to determine whether Brinson's misrepresentations were fraudulent, which would be an independent basis for rescission under subsection (1)(a) of the applicable statute.  *See* § 627.409(1)(a), Fla. Stat. (insurer may rescind if "[t]he misrepresentation, omission, concealment, or statement is fraudulent *or* is material either to the acceptance of the risk or to the hazard assumed by the insurer") (emphasis added).

the policy.  *Id.* at 968.  The Eleventh Circuit concluded that "because [the beneficiary] has not presented any evidence to rebut or contradict [the medical director's] conclusion that [the insurer] would not have issued the policy had it known the true reasons for [the insured's] hospitalization, [the beneficiary] has failed to create a genuine issue of material fact with respect to [the insurer's] entitlement to rescission under subsection (b) of § 627.409(1)."  *Id.* at 969.  Therefore, the court affirmed the district court's grant of summary judgment on the insurer's counterclaim for rescission.  *Id.*; *see also Simmons*, 170 F. Supp. 2d at 1224–25 (granting insurer's motion for summary judgment on counterclaim for rescission where beneficiary failed to submit any evidence to contradict affidavit of insurer's underwriter).

Similarly here, Darwin produced the affidavit of Gonzalez, who stated that Darwin would not have issued the Policy had it known about the events relating to the DCA Bar Complaint and the Andrew Bar Complaint.  Doc. 28-7, ¶ 13.  Brinson has not offered any evidence to rebut those assertions.  Accordingly, Brinson has failed to create a genuine issue of material fact with respect to Darwin's entitlement to rescission under Fla. Stat. § 627.409(1)(b).

### C.      Darwin Is Not Estopped from Denying Coverage

In its Response, Brinson argues that even if Darwin would otherwise be entitled to rescind the Policy under Fla. Stat. § 627.409(1)(a) or 627.409(1)(b), Darwin should be estopped from denying coverage.  Brinson does not point to any specific facts which would support its estoppel defense, but instead refers generally to Darwin's responses to Brinson's Request for Admissions (Doc. 29-1, pp. 6–11).  Doc. 29.  Brinson's argument appears to be based on Darwin's delay in notifying Brinson about the lack of coverage, Darwin's appointment of Akerman Senterfitt to represent Brinson on the Hunt Malpractice Claim, Darwin's May 25, 2011

email instructing Brinson to pay the $2,500 retention amount to Akerman Senterfitt, and Brinson's subsequent payment of that amount.

The Florida Supreme Court announced Florida's rule regarding equitable estoppel in insurance coverage disputes in *Doe v. Allstate Ins. Co.*, 653 So. 2d 371 (Fla. 1995).  In *Doe*, the Court answered the following certified question from the Eleventh Circuit:

> IF AN INSURANCE COMPANY ASSUMES DEFENSE OF AN ACTION WITH KNOWLEDGE OF FACTS WHICH WOULD HAVE PERMITTED IT TO DENY COVERAGE, IS IT ESTOPPED FROM SUBSEQUENTLY RAISING THE DEFENSE OF NON–COVERAGE?  IN ESSENCE, DOES THE EXCEPTION TO THE RULE OF EQUITABLE ESTOPPEL SET FORTH BY THE COURT IN *CIGARETTE RACING TEAM V. PARLIAMENT INS. CO.*, 395 So.2d 1238 (Fla. 4th DCA 1981), STILL EXIST…?

*Id.* at 372.  The *Doe* Court first addressed the second question.  In *Cigarette Racing Team*, the court recognized the general rule that the doctrine of estoppel will not operate to create coverage in an insurance policy where none originally existed.  395 So. 2d at 1239.  The *Cigarette Racing Team* court also noted that "[t]here is an exception to the rule, however, which provides that when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage."  *Id.* at 1239–1240 (citations and internal quotation marks omitted).  The insurer in *Cigarette Racing Team* assumed the defense of the insured without a reservation of rights or notice to the insured of possible non-coverage, and did not notify the insured that it would no longer defend the action due to non-coverage until sixteen months after it had assumed responsibility for the insured's defense.  *Id.* at 1240.  Moreover, the insured "claimed that it was prejudiced by [the insurer's] untimely withdrawal and filed an affidavit specifying instances of prejudice in opposition to [the insurer's] motion for summary judgment."  *Id.*  Therefore, the court reversed the trial court's grant of summary judgment for the

insurer because there was a genuine issue of material fact as to whether the insured had been prejudiced by the insurer's withdrawal.  *Id.*

In *Doe*, the Florida Supreme Court adopted the holding of *Cigarette Racing Team*, stating that the exception to the rule against equitable estoppel was still valid and thereby answered the Eleventh Circuit's second question in the affirmative.  653 So. 2d at 372–73.  Nevertheless, the *Doe* Court answered the Eleventh Circuit's first question in the negative, explaining:

> [W]hen the insurer undertakes the defense of a claim on behalf of one claiming to be an insured, we have recognized substantial duties on the part of both the insurer and the insured.  If an insurer erroneously begins to carry out these duties, and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage which it earlier acknowledged.  *However, we clearly state that the insured must demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured.  It is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation of the insurance policy.*

*Id.* at 372, 374 (emphasis added).

Here, Darwin undertook a defense of Brinson by appointing Akerman Senterfitt to represent Brinson on the Hunt Malpractice Claim and by instructing Brinson to pay the $2,500 retention amount to Akerman Senterfitt in its May 25, 2011 email.  When Darwin undertook the defense, it had knowledge of facts which would have permitted it to deny coverage, because it had received the December 29, 2010 and April 21, 2011 letters from Hunt's counsel setting forth Hunt's allegations with respect to the Hunt Malpractice Claim.

However, Brinson has failed to meet the requirement of *Doe* and *Cigarette Racing Team* that the insured "demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured."  *Doe*, 653 So. 2d at 374; *Cigarette Racing Team*, 395 So.2d at 1240. Unlike the insurer in *Cigarette Racing Team*, which never reserved its rights and did not notify the insured of non-coverage until sixteen months after assuming defense of the insured, Darwin promptly and repeatedly reserved its rights with respect to the Policy and stated that it was not

confirming coverage.  Darwin's January 5, 2011 letter to Brinson—sent seven days after Darwin received notice of the Hunt Malpractice Claim—merely stated that Darwin had established a file in connection with the Hunt Malpractice Claim, and clarified that Darwin was not confirming coverage and that Darwin reserved all rights and defenses under the Policy.  Doc. 28-5. Darwin's January 26, 2011 letter to Hunt's counsel and Brinson—sent less than a month after Darwin received notice of the Hunt Malpractice Claim—was merely a response to Hunt's request for insurance information required by Fla. Stat. § 627.4137(1).  Doc. 28-6.  In that letter, Darwin advised once again that it was reserving all rights and defenses under the Policy, *including specifically* any defense it might have to the extent that the events resulting in the Hunt Malpractice Claim were required to be disclosed as a claim or incident that could result in a claim in the Application.  *Id.*  Accordingly, Brinson was on prompt notice that Darwin might contest coverage under the Policy.

Perhaps the most critical difference between this case and *Cigarette Racing Team* is that Brinson has failed to put forward *any* evidence "specifying instances of prejudice in opposition to [Darwin's] motion for summary judgment."  *Cigarette Racing Team*, 395 So.2d at 1240.  In fact, by receiving representation from Akerman Senterfitt, Brinson actually benefited (however briefly) from a defense it was not entitled to under the Policy.  For that reason, this case is more like *Solar Time Ltd. v. XL Specialty Ins. Co.*, 142 F. App'x 430 (11th Cir. 2005).  In *Solar Time*, the Eleventh Circuit concluded that there was no prejudice to the insured and rejected an estoppel claim under Florida law where the insurer had issued reservation of rights letters and the insured had received the benefit of a defense it was not entitled to.  *Id.* at 433–35; *see also Coregis Ins. Co. v. McCollum*, 961 F. Supp. 1572, 1578 (M.D. Fla. 1997) (noting that "the prejudice to the insured that resulted in [*Doe* and *Cigarette Racing Team*] occurred when the

insurer assumed the insured's defense without a reservation of rights or notice to the insured of possible noncoverage until several months or even years after the underlying claim had been made" and denying insured's estoppel defense as a matter of law for failure to demonstrate prejudice); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Sahlen*, 807 F. Supp. 743, 747–48 (S.D. Fla. 1992), *aff'd and remanded sub nom. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*, 999 F.2d 1532 (11th Cir. 1993) (rejecting estoppel defense where insureds did "not present[ ] any evidence sufficient to establish that they were prejudiced by [insurer's] failure to seek rescission" for roughly one year following notice of claim).

Therefore, because Brinson has not established *any* prejudice it suffered as a result of Darwin's initial defense of Brinson, Brinson has failed to create a genuine issue of material fact and its affirmative defense of estoppel must fail as a matter of law.[8]

## D.      Darwin Is Entitled to Declaratory Judgment

In addition to requesting rescission of the Policy, Darwin stated a claim for declaratory judgment, seeking the Court's determination that Darwin has no duty to provide a defense or indemnity under the Policy to Brinson in connection with the malpractice claims against Brinson asserted by Defendants Phyllis Hunt and The Hay Cafe.[9]   Having determined that Darwin is entitled to rescind the Policy, the Court will grant Darwin summary judgment on its claim for

---

[8] The Court in this Order is requiring Darwin to refund the premiums paid by Brinson, with interest.  *See, e.g., Great Lakes Reinsurance PLC v. Arbos*, No. 08-20439-CIV, 2008 U.S. Dist. LEXIS 109472, at *24–25 (S.D. Fla. Jan. 6, 2008) (granting rescission and ordering insurer to refund any premiums paid by insured); *Coregis*, 961 F. Supp. at 1577 (refund of policy premiums is appropriate upon insurer's rescission of insurance contract); *Gonzalez v. Eagle Ins. Co.*, 948 So. 2d 1, 3 (Fla. 3d Dist. Ct. App. 2006) (stating that an insurer rescinding a policy must restore the status quo, including return of premiums to insured).

[9] Darwin also requested declaratory judgment as to the Masreld Group.  Doc. 1, p. 17.  However, because the Court is dismissing the Masreld Group from this action, *see supra* note 5, the Court need not grant declaratory judgment as to the Masreld Group.

declaratory judgment as to Defendants Phyllis Hunt and The Hay Cafe.  *See Nat'l Union*, 807 F. Supp. at 748 (granting summary judgment to insurer on claim for declaratory judgment upon determination that rescission was proper).

## IV.    CONCLUSION

For the aforementioned reasons, the Court concludes that no genuine issues of material fact exist and Darwin is entitled to judgment in its favor as a matter of law.  Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1.    Because the parties have stipulated that Defendant Masreld Investor Group LLC is no longer pursuing a malpractice claim against Brinson (Doc. 34, ¶ 9(dd)), Defendant Masreld Investor Group LLC is **DISMISSED** from this action.  The Clerk is directed to terminate Masreld Investor Group LLC as a party to this action.

2.    Plaintiff Darwin National Assurance Company's Motion for Summary Judgment (Doc. 27) is **GRANTED**.

3.    The Lawyers Professional Liability Insurance Policy No. 0304-9441, issued by Darwin to the Brinson Law Firm, is hereby declared void *ab initio* and rescinded pursuant to Fla. Stat. § 627.409(1)(a) and 627.409(1)(b).  Therefore, Darwin has no duty to provide a defense or indemnity under the Policy to Brinson in connection with the malpractice claims against Brinson asserted by Defendants Phyllis Hunt and The Hay Cafe.

4.    Darwin shall refund any premiums paid by Brinson, with interest accruing from the date of payment of any such premium and determined by using the Treasury Bill rate prevailing on such date.

5.      A Declaratory Judgment will be entered by separate Order of the Court.

**DONE** and **ORDERED** in Orlando, Florida on June 3, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties